IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JASLIND GARCIA-HICKS,<br><br>**Plaintiff**,<br><br>v.<br><br>VOCATIONAL REHABILITATION ADMINISTRATION,<br><br>**Defendant.** | CIVIL NO. 13-1491 (FAB) |

**MEMORANDUM AND ORDER**[1]

BESOSA, District Judge.

Before the Court is defendant Vocational Rehabilitation Administration's ("VRA") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)").  (Docket No. 14.)  Having considered the complaint, (Docket No. 2), as well as the arguments contained in plaintiff Jaslind Garcia-Hicks ("Garcia")'s opposition, (Docket No. 17), the Court holds its decision on defendant's motion to dismiss in abeyance.  Recognizing that plaintiff initially proceeded as a *pro se* litigant the Court allows Ms. Garcia time to amend her complaint in accordance with this memorandum and order.

---

[1] Matthew D'Auria, a second-year student at the University of Virginia School of Law, assisted in the preparation of this memorandum.

Civil No. 13-1491 (FAB)                                                      2

# I. BACKGROUND

## A. Factual History

The Court takes the following facts as true, as pled in plaintiff Garcia's complaint:

### 1. Plaintiff's Employment Relationship to Defendant

Plaintiff Garcia is an employee of the Department of Labor and Human Resources through defendant VRA, which is responsible for physically and emotionally rehabilitating disabled individuals so that they may find employment and become productive members of society. (Docket No. 2 at p. 3.) At VRA, Ms. Garcia has held the title of Vocational Counselor since July 5, 2005. Id. Her daily tasks include handling consumer files, which are often heavy and contain numerous documents. Id. At the time the complaint was filed, Ms. Garcia managed 327 individual cases. Id.

### 2. Plaintiff's Medical Disabilities and Defendant's Alleged Behavior

On July 28, 2009, Ms. Garcia was involved in a car accident that contributed to certain orthopedic conditions associated with her cervical vertebrae and lumbar sacrum.[2] (Docket No. 2 at pp. 3-4.) As a result of the accident, she experienced great discomfort while sitting in her normal chair at work and

---

[2] These conditions were not identified immediately after the accident. It was not until February of 2012 that Ms. Garcia was diagnosed with cervical strain, lumbosacral strain, and bulging disks L3L4, L4L5. (Docket No. 2 at p. 5.) She was also eventually diagnosed with a myositis condition.

Civil No. 13-1491 (FAB)                                                    3
_____

therefore found it difficult to be productive at her desk.  <u>Id.</u> at p. 4.

When Ms. Garcia reported the accident to VRA, plaintiff's immediate supervisor and VRA Regional Director, Ms. Isabelita Vallejo ("Vallejo"), was unwilling to accommodate her requests for assistance. (Docket No. 2 at p. 4.) For example, in the spring of 2010, Ms. Garcia requested, pursuant to her doctor's instructions, a parking spot closer to her office, and an ergonomic chair for her myositis condition.  <u>Id.</u>  Although plaintiff presented medical evidence to support those requests, Vallejo rejected them and assigned Ms. Garcia to a parking spot that was farther away from her office.  <u>Id.</u>  Plaintiff alleges that Vallejo also made accusations that Ms. Garcia did not have any physical disability because she looked healthy on the outside.  <u>Id.</u>

In response to Vallejo's actions, Ms. Garcia filed a formal complaint with the Oficina del Procurador de las Personas con Impedimentos ("OPPI"), after which she was assigned to a handicapped parking space.  (Docket No. 2 at p. 5.)  Ms. Garcia did not, however, receive an ergonomic chair at that time, although she continued to request one.  <u>Id.</u>  VRA did not agree to process Ms. Garcia's request until she filed a second formal complaint with the OPPI.  <u>Id.</u>  Prior to that time, however, several other employees who asked for ergonomic chairs after Ms. Garcia had their requests fulfilled.  <u>Id.</u>

Civil No. 13-1491 (FAB)                                                          4
_____

       In January 2012, Ms. Kimiris Concepcion ("Concepcion"), plaintiff's new supervisor, appointed in November 2011, revoked Ms. Garcia's handicap parking spot and assigned it to another employee who used a wheelchair.  (Docket No. 2 at pp. 6-7.) Because parts of the parking lot were under construction at that time, Concepcion required plaintiff and another disabled employee to park outside the lot but allowed all other employees to keep their parking spaces.  <u>Id.</u> at p. 7.  From January to March, 2012, Ms. Garcia began to experience lumbar and cervical pains, as well as pain in her hands and legs.  <u>Id.</u>

       In December 2010, Ms. Garcia was diagnosed with an early stage of hypertension, a condition that allegedly resulted from all the stress and mistreatment encountered by plaintiff at VRA.  (Docket No. 2 at p. 5.)  On October 31, 2012, she suffered a cardiac episode at work and called 9-1-1.  <u>Id.</u> at p. 7. Ms. Concepcion neither came to assist Ms. Garcia nor appointed any other employee to accompany her in the ambulance.  <u>Id.</u>  As a result of being transported to the hospital alone, plaintiff suffered emotional distress.  <u>Id.</u>

       Ms. Garcia alleges that her superiors at VRA wrongfully denied her requests (1) to have students to supervise and (2) for an assistant to help her manage her daily workload. (Docket No. 2 at  pp. 6-7.) With regard to the first allegation, plaintiff asserts that, despite possessing a master's degree in

Social Work from the University of Puerto Rico, with a concentration in supervision and administration of social agencies, she was only permitted to supervise one student during 2010.  Id. at p. 6.  Other, less experienced vocational counselors, however, were assigned multiple, consecutive students to supervise.  Id.

With respect to the second allegation, Ms. Garcia indicates that VRA traditionally provides each vocational counselor with an assistant.  Id.  These assistants help the counselors to manage and perform their various responsibilities, including keeping detailed records of consumer cases, creating checks for Maintenance and Transportation, and purchasing medical and rehabilitation products.  Id.  Concepcion did not permit Ms. Garcia to have an assistant.  Id. at p. 7.

On October 1, 2012, Ms. Garcia wrote a letter to the VRA Administrator requesting that Concepcion be replaced as her supervisor.  (Docket No. 2 at p. 7.)  On January 17, 2013, VRA honored that request.  Id.

**B.    Procedural Background**

On June 20, 2013, plaintiff filed a complaint against the VRA alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, by defendant VRA. (Docket No. 2.)  Defendant's motion seeks dismissal of plaintiff's claims on two principal grounds.  First, defendant argues that the

Civil No. 13-1491 (FAB)                                                6
_____

Court lacks subject matter jurisdiction to hear the case because Ms. Garcia failed adequately to allege that she exhausted her administrative remedies with the Equal Employment Opportunity Commission ("EEOC"), as required by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  As a result of this failure, defendant argues, plaintiff's claims are time-barred.  Second, defendant argues that plaintiff failed to join indispensable parties to the case:  the Department of Labor and Human Resources and the Commonwealth of Puerto Rico.  (Docket No. 14 at pp. 1-2.)

Ms. Garcia opposed defendant's motion to dismiss on December 3, 2013.  (Docket No. 17.)  First, Ms. Garcia rebuts defendant's assertion that the Court lacks subject matter jurisdiction; she provides information concerning the specific dates of correspondence with the EEOC to demonstrate the exhaustion of her administrative remedies.[3]  Id. at pp. 2-3.  Second, plaintiff argues that her failure to join and serve the Commonwealth of Puerto Rico and the Department of Labor and Human Resources does not warrant dismissal of her complaint. Ms. Garcia suggests that Federal Rule of Civil Procedure 19(a)(2) permits the Court to order the joinder of both the Commonwealth of Puerto Rico and the Department of Labor and Human Resources without dismissing

---

[3] The Court notes that plaintiff Garcia included copies of the relevant documents as an exhibit to her complaint. (Docket No. 2-1.)  Those documents, which include a copy of Garcia's original filing with the EEOC and a copy of the right-to-sue letter, clearly display the dates on which Garcia corresponded with the EEOC.

Civil No. 13-1491 (FAB)                                                7

her complaint. Fed. R. Civ. P. 19(a)(2).  Plaintiff further argues that Federal Rule of Civil Procedure 4(m) authorizes the Court, upon a showing of good cause, to grant an extension of time for service of process to be completed.

**II. DISCUSSION**

    **A.  Exhaustion of Administrative Remedies and Motion to Dismiss Pursuant to Rule 12(b)(1)**

Defendant argues that the Court does not have subject matter jurisdiction over plaintiff's case because Ms. Garcia did not adequately allege exhaustion of administrative remedies with the EEOC.  The First Circuit Court of Appeals has held that the ADA "mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and that, absent special circumstances . . . such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999). Thus, failure to exhaust administrative remedies, if unexcused, "bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit."  Id. at 278 (internal citations omitted).

Compliance with Title VII's administrative procedures includes two key components.  First, the employee must file a charge of discrimination with the EEOC within a specified period of time after the discrimination has occurred.  Jorge v. Rumsfeld, 404

Civil No. 13-1491 (FAB)                                                        8

F.3d 556, 564 (1st Cir. 2005).  In Puerto Rico, the employee is required to file a complaint with the EEOC or Puerto Rico's Anti-Discrimination Unit within 300 days of the alleged discrimination.  See 42 U.S.C.A. § 2000e *et seq.*; Bonilla, 194 F.3d at 278 n.4 (internal citations omitted); Cintron-Garcia v. Supermercados Econo, Inc., 818 F. Supp. 2d 500, 506-507 (D.P.R. 2011) (Gelpi, J.) (internal citations omitted); Rivera-Diaz v. Humana Health Plans of P.R., Inc., Civil No. 12-1732, 2013 WL 496182, at *2 (D.P.R. February 7, 2013) (internal citations omitted) (Gelpi, J.).  Second, the employee must file suit within 90 days of receiving a right-to-sue letter from the EEOC.  Jorge, 404 F.3d at 564.  This 90-day limitations period, however, begins to run only upon receipt by the charging party of notice that the EEOC has terminated its administrative processing of the charge and has decided not to sue.  Cintron-Garcia, 818 F. Supp. 2d at 507.

**1. Application**

To avoid dismissal of her complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"), plaintiff Garcia must show that she successfully exhausted her administrative remedies by complying with both filing requirements established by Title VII.  As an exhibit to her complaint, Ms. Garcia provided copies of various documents that evidence her correspondence with the EEOC, including a copy of the original Charge of Discrimination filed with the EEOC on January 4, 2013.

Civil No. 13-1491 (FAB)                                                          9

(Docket No. 2-1 at p. 21.)  The Charge of Discrimination indicates that the first instance of discrimination by VRA occurred on September 30, 2008 and that discrimination continuously occurred until November 30, 2012.  Id. Taking Ms. Garcia's allegations as true, as the Court must when deciding a motion to dismiss, plaintiff's January 4, 2013 filing with the EEOC was made well within the 300-day deadline mandated by Title VII.

The exhibit to plaintiff's complaint also includes a copy of the right-to-sue letter issued by the EEOC in response to Ms. Garcia's Charge of Discrimination.  (Docket No. 2-1 at p. 23.) The letter is dated March 18, 2013, and the envelope used to mail the letter to Ms. Garcia is postmarked March 19, 2013.  Id. at p. 26.  In her opposition to defendant's motion, plaintiff alleges that she received that envelope on March 25, 2013. (Docket No. 17 at p. 2.)  Thus, to comply with the second component of the exhaustion requirement, plaintiff had until June 23, 2013 to file her complaint.  Accordingly, Ms. Garcia complied with the 90-day limitations period by filing suit on June 20, 2013.

In sum, plaintiff successfully exhausted her administrative remedies with the EEOC by complying with both of the filing requirements set forth in Title VII. Consequently, the Court has subject matter jurisdiction to hear plaintiff's case.  Rule 12(b)(1), therefore, does not provide a sufficient ground for dismissal of Ms. Garcia's claims against the defendant.

**B.   The Eleventh Amendment and Motion to Dismiss Pursuant to Rule 12(b)(1)**[4]

A motion to dismiss pursuant to the Eleventh Amendment of the United States Constitution is properly construed as a motion pursuant to Rule 12(b)(1).  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)); but cf. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997) ("The [Eleventh] Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction.  The immunity is one the States enjoy save where there has been 'a surrender of this immunity in the plan of the convention.'") (quoting Principality of Monaco v. Mississippi, 292 U.S. 313, 322–323 (1934)).

The Eleventh Amendment prevents private individuals from bringing suit against non-consenting states.  Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001).  "The Commonwealth of Puerto Rico is considered a state for purposes of the Eleventh Amendment."  Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939 n.3 (1st Cir. 1993) (internal

---

[4] Defendant argues that dismissal of plaintiff's complaint is proper pursuant to Rule 12(b)(7) because plaintiff failed to join indispensable parties as required by Federal Rule of Civil Procedure 19.  The Court believes, however, that this case raises a more fundamental issue of sovereign immunity because plaintiff has brought suit against a government agency. Thus, the Court proceeds by addressing whether plaintiff's action against VRA is barred by the Eleventh Amendment to the United States Constitution.

Civil No. 13-1491 (FAB)                                               11

citations omitted).  This immunity also extends to protect the arms or *alter egos* of the state.  Ainsworth Aristocrat Int'l. Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d 1034, 1036 (1st Cir. 1987).  See also Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477 (1st Cir. 2009) (internal quotation marks and citation omitted) ("An administrative arm of the state is treated as the state itself for the purposes of the Eleventh Amendment, and it thus shares the same immunity.")

Several important exceptions exist, however, to the principle of sovereign immunity.  First, as relevant here, the Supreme Court of the United States has affirmed that Congress has the authority to abrogate the states' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.  Garrett, 531 U.S. at 363.  Second, while the Eleventh Amendment shields state officers from actions for money damages when those suits target the officers in their official capacities, it does not preclude official capacity suits seeking injunctive relief.  See Garrett, 531 U.S. at 374 n.9; Ex parte Young, 209 U.S. 123 (1908).  Nor does the Eleventh Amendment immunize state officials from liability for money damages when a suit targets them in their personal capacities.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

### 1. Application

Plaintiff seeks both monetary damages and injunctive relief in her suit against VRA. As defendant correctly argues in its motion, however, VRA is an arm or alter ego of the state. See, e.g., Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110, 118-119 (D.P.R. 2011) (Gelpi, J.). Thus, VRA cannot be held liable, pursuant to the Eleventh Amendment and the principle of sovereign immunity, for violations of the ADA or the Rehabilitation Act. See id.

Furthermore, neither of the exceptions outlined above applies to this case. Although Congress clearly intended to abrogate the states' sovereign immunity from suit for violations of the ADA, see 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."), the Supreme Court held that Title I of the ADA was not a valid congressional abrogation. Garrett, 531 U.S. at 374.

Nor does the current complaint name as a defendant any individual VRA official responsible for the acts of discrimination alleged. To circumvent sovereign immunity, plaintiff might have filed, for example, a suit seeking injunctive relief against the VRA "Administrator" in his or her official capacity, or an action for damages against supervisors Vallejo or

Civil No. 13-1491 (FAB)                                                13

Concepcion in their personal capacities.  Plaintiff, however, only named VRA as a defendant in her suit.

Because VRA enjoys Eleventh Amendment immunity, and plaintiff Garcia did not bring suit against individual officers of VRA in either their official or personal capacities, the Court **GRANTS** defendant's motion to dismiss.  (Docket No. 14.)  Joinder of the Commonwealth of Puerto Rico and the Department of Labor and Human Resources pursuant to Rule 19(a) would be futile for the same reasons.

**III. CONCLUSION**

For the reasons articulated at the beginning of this Memorandum, the Court holds its decision on defendant's motion to dismiss in abeyance.  (Docket No. 14.)  Plaintiff has seventeen (17) days from entry of this order to amend her complaint in accordance with this memorandum.  After **June 30, 2014,** the Court will dismiss without prejudice all claims contained in the complaint if an amended complaint is not filed.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 11, 2014.

                                     s/ FRANCISCO A. BESOSA
                                     FRANCISCO A. BESOSA
                                     UNITED STATES DISTRICT JUDGE