IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JASLIND GARCIA-HICKS,

**Plaintiff,**

**v.**                                    **Civil No.** 13-1491 (FAB)

VOCATIONAL REHABILITATION
ADMINISTRATION, *et. al*,

**Defendants.**

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendants Ivan A. Clemente-Delgado ("Clemente"), Kimiris Concepcion ("Concepcion"), and Isabelita Vallejo ("Vallejo")'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket No. 38.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion.

I.    BACKGROUND

A.    Procedural Background

On June 20, 2013, plaintiff Jaslind Garcia-Hicks ("Garcia") filed a discrimination complaint pursuant to the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12101, *et*

---

[1] Garcia complied with administrative requirements by obtaining a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") and filing this complaint within the ninety-day window authorized under Title VII of the Civil Rights Act of 1964 ("Title VII").  (Docket 22 at p. 9.)

*seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* against the Vocational Rehabilitation Administration ("VRA").   (Docket No. 2.)   On June 30, 2014, plaintiff Garcia filed an amended complaint pursuant to the ADA, the Rehabilitation Act, and the Equal Protection Clause[2] of the United States Constitution against defendants the Commonwealth of Puerto Rico, the Puerto Rico Department of Labor and Human Resources ("DLHR"), Vance E. Thomas-Rider ("Thomas"), Clemente, Concepcion, and Vallejo.   (Docket No. 22.)   On October 27, 2015, the Court granted plaintiff Garcia's motion to dismiss defendants Commonwealth of Puerto Rico, DLHR, and Thomas voluntarily.   (Docket Nos. 44, 50, 51.)   The remaining defendants are Clemente, in his official capacity as Administrator of the VRA, and Concepcion and Vallejo, in their individual capacities.   (Docket No. 44 at p. 4.)

Plaintiff Garcia alleges that she was a disabled person who was qualified for her job but denied reasonable accommodations by her employer, VRA.   (Docket No. 22 at pp. 10-11.)   She claims that this denial exacerbated the injuries she received in a car accident and caused her to develop high blood pressure due to stress.   Id. at pp. 5-6.

---

[2] The complaint refers to the "Equal Amendment Clause under the Constitution of the United States of America," when referencing the Equal Protection Clause.   (Docket No. 22 at p. 1.)

On March 31, 2015, defendants Clemente, Concepcion, and Vallejo[3] moved to dismiss plaintiff Garcia's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  (Docket No. 38.)  On April 23, 2015, plaintiff Garcia opposed defendants' motion to dismiss.  (Docket No. 40.)

**B.    Factual Background**

Following standard Rule 12(b)(6) procedure, the Court views the following non-conclusory factual allegations stated in plaintiff's amended complaint as true.  See <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 5, 10 (1st Cir. 2011).

Plaintiff Garcia has been employed as a vocational counsel for VRA since July 5, 2005.  (Docket No. 22 at pp. 3-4.) The position includes handling heavy case files, tracking consumer cases through the CRIS computer system, purchasing medical rehabilitation equipment, creating transportation and maintenance checks, and other tasks which require long periods of sitting.  <u>Id.</u> at pp. 4, 8.  Garcia holds two masters degrees, including a Master's Degree in Social Work with a concentration in Supervision and Administration of Social Agencies.  <u>Id.</u> at pp. 4, 7.  Each VRA vocational counselor is assigned an assistant and may be assigned student interns to assist in managing their caseloads.  <u>Id.</u> at

---

[3] Defendants VRA, DLHR, and the Commonwealth of Puerto Rico were also parties to this motion, but have since been dismissed voluntarily from the case pursuant to their Eleventh Amendment immunity.  (Docket Nos. 44, 50, 51.)

pp. 7-8.   Despite having a steady caseload of 300 to 500 cases, Garcia was not assigned an assistant and was only assigned one student intern for a period in 2010.   Id. at pp. 4-5, 7-8.

On July 28, 2009, Garcia was involved in an automobile accident that injured her back.[4]   (Docket No. 22 at p. 5.)   These injuries made it painful to sit for extended periods of time, so her doctor recommended an ergonomic chair.   Id.   Garcia presented medical evidence of her injuries to VRA.   Id.   In spring 2010, she also requested a parking space close to the VRA building's entrance.   Id.   Her request was denied by her supervisor, defendant Vallejo, who speculated that Garcia did not have a physical condition because she appeared to be healthy.   Id.   Garcia obtained a handicapped parking license by filing a formal complaint with the Office of the Ombudsman for Persons with Disabilities ("OPPI"). Id. at p. 6.

On August 31, 2010, defendant Vallejo was reassigned to the central office and two other employees received ergonomic chairs.   (Docket No. 22 at p. 6.)   Garcia did not receive an ergonomic chair despite having requested one before these two employees.   Id. at pp. 6-7.   In December 2010, Garcia was diagnosed with high blood pressure due to stress.   Id. at p. 6.

---

[4] Diagnosis of these injuries occurred in spring 2010.   (Docket No. 22 at p. 5.)

In November 2011, defendant Concepcion was assigned as Garcia's supervisor. (Docket No. 22 at p. 7.) In January 2012, Concepcion revoked Garcia's handicapped parking privilege and assigned the parking space to a wheelchair-using employee whose parking space was under construction. Id. at p. 8. In February 2012, after several months of strong pain, Garcia was diagnosed with cervical strain, lumbosacral strain, and bulging disks in her lower back. Id. at pp. 6, 8. She made another request for an ergonomic chair, filed a complaint with the Puerto Rico State Insurance Fund Corporation ("CFSE"), and filed a second complaint with OPPI. Id. at pp. 6, 8.

On October 31, 2012, Garcia suffered a high blood pressure episode. (Docket No. 22 at p. 9.) Garcia was taken to the hospital by ambulance following an emergency call. Id. Concepcion did not aid Garcia, nor was an employee provided to accompany Garcia in the ambulance. Id. Following this event, Garcia filed a second complaint with CFSE. Id. Garcia was assigned a new supervisor on January 17, 2013. Id. at p. 8.

## II.  RULE 12(b)(6) STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts are "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their

favor." Ocasio-Hernández, 640 F.3d at 17. For Rule 12(b)(6) analysis, even "unrealistic or nonsensical" factual allegations must be accepted, as long as they are not conclusory. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). A plaintiff's complaint must set forth "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007); see also Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (stating that by requiring plaintiff to establish a prima facie case in his or her complaint, the court was holding the plaintiff to a "crucible hotter than the plausibility standard demands"). Detailed factual allegations are not necessary to survive a motion to dismiss as "a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 7, 13 (quoting Twombly, 550 U.S. at 556); see Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiffs cannot, however, rest on "labels and conclusions" or a formulaic recitation of a cause of action's elements," but instead must "raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 545. For motions to dismiss employment discrimination cases, the United States Supreme Court has declined to establish a heightened pleading standard, but instead, has applied the general 'plausibility of the

claim' standard.  Id. at 547 (upholding the ruling in Swierkiewicz
v. Sorema N.A., 534 U.S. 506 (2002)).

When determining plausibility of a claim on a motion to
dismiss, the court does not focus on particular factual
allegations, but instead, on the "cumulative effect of the
[complaint's] factual allegations." Rodriguez-Reyes, 711 F.3d at
55 (quoting Ocasio-Hernández, 640 F.3d at 14).  The cumulative
plausibility analysis "focuses on the reasonableness of the
inference of liability that the plaintiff is asking the court to
draw from the facts alleged in the complaint." Ocasio-Hernández,
640 F.3d at 13.

## III. ANALYSIS

### A.    Individual Capacity Suits for Damages Under the ADA

Defendants argue that the individual capacity suits
against Concepcion and Vallejo are barred under the ADA.[5] (Docket
No. 38 at p. 7.)  Looking to the prohibition of individual suits
under Title VII of the Civil Rights Act, the First Circuit Court of
Appeals resolved the issue of individual capacity suits under the
ADA.  Fantini v. Salem State Coll., 557 F.3d 22, 28-31 (1st Cir.
2009).  In Fantini, the First Circuit Court of Appeals explained

---

[5] The same standards are used to analyze employment discrimination
claims under Section 794 of the Rehabilitation Act as under Title I
of the ADA.  Accordingly, the Court does not separately analyze
plaintiff Garcia's Rehabilitation Act claims.  See Oliveras-Sifre
v. P.R. Dept. of Health, 214 F.3d 23, 25 n.2 (1st Cir. 2000)
(citing Feliciano v. State of R.I., 160 F.3d 780, 784 (1st Cir.
1998)); 29 U.S.C. § 794; 42 U.S.C. § 12117.

how the language in Title VII that excludes liability for small
employers with less than fifteen employees indicates that Congress
intended also to exclude liability for individuals.  Id. at 29.
The court also explained that the 1991 Amendments to Title VII,
which laid out a detailed scheme of remedies against employers
based on their number of employees, did not include details
regarding remedies for claims against individual employees.  Id.
at 31.  The Fantini court held that the language and amendments to
Title VII indicated that Congress did not intend Title VII to allow
for individual capacity suits.  Id. at 28-31 ("[I]t is
inconceivable that Congress intended to allow civil liability to
run against individual employees.").

        In Roman-Oliveras v. Puerto Rico Electric Power
Authority, the First Circuit Court of Appeals looked to its
previous examination of the congressional intent behind Title VII
as discussed in Fantini.  655 F.3d 43, 51-52 (1st Cir. 2011).
Finding that the language of Title VII and Title I of the ADA is
nearly identical and that remedies under both laws were expanded by
identical 1991 amendments, the court stated that it agreed "with
the virtually universal view that Title I of the ADA, like Title
VII of the Civil Rights Act, 'addresses the conduct of employers
only and does not impose liability on co-workers.'"  Roman-
Oliveras, 655 F.3d at 52 (quoting Fantini, 557 F.3d at 31.)  The

court held that individual capacity suits are not permitted under the ADA.  Id.

Here, plaintiff Garcia's claims against Concepcion and Vallejo are individual capacity suits for damages under the ADA. (Docket No. 22 at p. 3.)  Because individual capacity suits are not permitted pursuant to the ADA, plaintiff Garcia's individual capacity claims against Concepcion and Vallejo are barred.  See Roman-Oliveras, 655 F.3d at 52.  Accordingly, defendants' motion to dismiss is **GRANTED** as to her individual capacity claims against defendants Concepcion and Vallejo.  This decision renders **MOOT** defendants' qualified immunity[6] and timeliness arguments.  See Docket No. 38 at pp. 13-14, 16-19.  Thus, the only remaining claim is plaintiff Garcia's ADA claim against defendant Clemente in his official capacity for injunctive relief. (Docket No. 22 at pp. 9-11.)

**B.   Plaintiff's ADA Claims**

The ADA was created to ensure that individuals with physical or mental disabilities have a legal recourse to redress discrimination in critical areas, such as employment, because having a disability "in no way diminish[es] a person's right to fully participate in all aspects of society . . ."  See 42 U.S.C.

---

[6] Qualified immunity applies only to claims for damages.  See Richard H. Fallon, Jr. et al., Hart and Wechsler's the Federal Courts and the Federal System 995 (6th ed. 2009); Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645-48 (2002) (noting that Ex Parte Young claims are not barred by absolute immunity).

§ 12101(a).  The ADA states that "[n]o covered entity[7] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  Id. § 12112(a).

        Discriminating against a qualified individual on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  Id. § 12112(b)(5)(A).  An unreasonable delay in providing accommodations may also qualify as discriminating against a qualified individual on the basis of disability.  Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 200 (1st Cir. 2011).  "To make out a reasonable accommodation claim, [a plaintiff] must show (1) that [he or] she suffers from a disability, as defined by the ADA, (2) that [he or] she is an otherwise qualified individual, meaning that he or she is 'nevertheless able to perform the essential functions of [his or her] job, either with or without reasonable accommodation,' and

---

[7] VRA is a "covered entity" because there is no dispute that it is an employer of fifteen or more employees.  See 42 U.S.C. § 12111(2), (5) (defining "covered entity").

(3) that the [employer] knew of [his or] her disability and did not reasonably accommodate it." Id. at 198 (quoting Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)).

Here, defendants argue that plaintiff Garcia does not have a disability and is not a qualified individual. (Docket No. 38 at pp. 10-12.) The Court does not address the third prong of the reasonable accommodation claim analysis because defendants make no argument regarding VRA's knowledge or failure to accommodate plaintiff Garcia's disability reasonably.

### 1. "Qualified Individual"

Defendants argue that plaintiff Garcia is not a qualified individual under the ADA. (Docket No. 38 at pp. 10-12.) The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff Garcia demonstrated that she was a qualified individual by alleging that she holds two master's degrees related to her position as a vocational counselor, had four years of experience in the job before her car accident, and continued to perform to a satisfactory level after the car accident. See Docket No. 22 at pp. 4-5, 8; Harding v. Cianbro Corp., 436 F. Supp. 2d 153, 179-80 (D. Me. 2006) (finding that plaintiff employee was a qualified individual because he had many

years of experience in the job and continued performing the same type of work for a different company after his disability).

### 2. "Disability"

Defendants contest whether plaintiff Garcia qualifies as having a "disability" under the ADA. (Docket No. 38 at pp. 10-12.)  Specifically, defendants allege that plaintiff Garcia failed to connect the limitations of her injuries to specific aspects of her identified major life activity of working. Id. at p. 12.

"Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities" of an individual.[8]  42 U.S.C. § 12102(1)(A); 29 C.F.R. pt. 1630, App.  The ADA instructs that the definition of disability be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted . . . ."  42 U.S.C. § 12102(4)(A).

In Bragdon v. Abbott, the United States Supreme Court outlined a three-step analysis to determine if a condition is a disability.  524 U.S. 624, 631 (1998); see also Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011).  First, the court determines whether the injury constitutes a physical

---

[8] Disability may also be established by proving "a record of such impairment, or being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1)(B)-(C); 29 C.F.R. pt. 1630, App.  Neither of these apply here because plaintiff Garcia does in fact currently have an impairment.  See Roman-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 48-49 (1st Cir. 2011).

impairment.  Bragdon, 524 U.S. at 631.  Then, the court determines
if the life activity at issue is a major life activity under the
ADA.  Id.  Finally, if the first two questions are answered
affirmatively, the court determines whether the impairment
substantially limits the major life activity.  Id.

### a.   Impairment

The EEOC, clarifying the ADA, defines physical
impairment as "[a]ny physiological disorder or condition, cosmetic
disfigurement, or anatomical loss affecting one or more body
systems, such as neurological, musculoskeletal, . . . [and]
circulatory . . . ."  29 C.F.R. § 1630.2(h).  In Lebron-Torres v.
Whitehall Labs. the First Circuit Court of Appeals found that a
lumbar strain is a physical impairment.  251 F.3d 236, 240 (1st
Cir. 2001).  Because plaintiff Garcia also suffers from lower back
injuries, including myositis, cervical strain, lumbosacral strain,
and bulging disks, (Docket No. 22 at p. 6), she also has a physical
impairment.

### b.   Major Life Activity

Plaintiff Garcia's complaint discusses
"working" as the major life activity that is affected by her
impairment.  (Docket No. 22 at pp. 4-5, 8.)  The ADA includes
working among its list of major life activities.  42 U.S.C.
§ 12102(2)(A).  Also, the First Circuit Court of Appeals in Lebron-
Torres, following the Supreme Court's lead in Sutton v. United Air

Lines, Inc., 527 U.S. 471, 492 (1999), *superseded by statute on other grounds*, Pub. L. No. 110-325, 122 Stat. 3553, found that working is a major life activity.  251 F.3d at 240.  Therefore, plaintiff Garcia's complaint properly identifies working as a major life activity.

>    **c.    Impairment's Substantial Limitations on Major Life Activity**

The third prong of the Bragdon test to determine if an individual qualifies as having a "disability" recently underwent considerable change due to Congressional action in passing the ADA Amendments Act of 2008 ("ADAAA").  Pub. L. No. 110-325, 122 Stat. 3553.

Pursuant to the pre-ADAAA standard, back injuries like plaintiff Garcia's were often found not to limit the major life function of working substantially.  The pre-ADAAA EEOC regulations set out a requirement that for an impairment to limit the major life activity of working substantially, the plaintiff must show that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Ruiz Rivera v. Pfizer Pharm. LLC, 463 F. Supp. 2d 163, 173 (D.P.R. 2006) (quoting 29 C.F.R. § 1630.2(j)(3)(I)).  In Lebron-Torres, the First Circuit Court of Appeals, on a motion for summary judgment, found that the plaintiff's lumbar strain, while characterized as an impairment for

ADA purposes, did not substantially limit her major life activity
of work because it did not preclude her from a "broad range of jobs
in various classes."   251 F. 3d at 241; see also McDonough v.
Donahoe, 673 F.3d 41, 47 (1st Cir. 2012) (denying that the
plaintiff's back and neck pain constituted a disability and stating
that "[t]he number of Americans restricted by back problems to
light work is legion.  They are not disabled." (quoting Mays v.
Principi, 301 F.3d 866, 869 (7th Cir. 2002))); Camacho-Rodriguez v.
Potter, 136 F. App'x 378, 379 (1st Cir. 2005) (finding mail
carrier's back injury prevented him from doing his job, but did not
substantially limit him from working because he was not prevented
from doing a class of jobs).  This Court also found back injuries
impeding lifting to be insufficient for a finding of "substantially
limits" in the life activity of working pursuant to the pre-ADAAA
standard.  See Ortiz Molina v. MAI del Caribe, Inc., 83 F. Supp. 2d
271, 272, 275, 277 (D.P.R. 2000) (lumbo-sacral strain limiting
lifting did not substantially limit the major life event of
working).  Finally, pain, decreased speed in productivity, and
being "restricted to some extent in his ability to engage in the
major life activity of working" were not enough for a finding of a
substantial limit on the major life event of working.  Thornton v.
United Parcel Service, Inc., 587 F.3d 27, 34-35 (1st Cir. 2009)
(analyzing UPS truck driver's back spasm and pain, which restricted
him from heavy lifting); Rodriguez Diaz v. Big K-Mart, 582 F. Supp.

2d 147, 149, 152 (D.P.R. 2008) (applying the Sutton standard for
"substantially limits" in analyzing employee's post-stroke pain and
increased time in completing work-related tasks).  Pursuant to the
pre-ADAAA standard, individuals were excluded from ADA coverage
whom Congress had intended to be covered.  Pub. L. No. 110-325,
§ 2(a)(4), 122 Stat. 3553.

        Even pursuant to the harsh, pre-ADAAA standard,
however, some courts still realized that the bar to overcoming a
motion to dismiss under the ADA is low.  These courts went as far
as not even requiring the "substantially limits" prong of Bragdon,
but instead required only an identification of an impairment in the
complaint.  For example, in Fowler v. UPMC Shadyside, the Third
Circuit Court of Appeals held that all that is required to overcome
a motion to dismiss is that the pleadings must identify an
impairment.  578 F.3d 203, 213-14 (3d Cir. 2009) (relying on Sutton
and the pre-ADAAA standard to interpret a motion to dismiss under
the Rehabilitation Act).  Likewise, the Sixth Circuit Court of
Appeals in E.E.O.C. v. J.H. Routh Packing Co. held that "so long as
the complaint notifies the defendant of the claimed impairment, the
substantially limited major life activity need not be specifically
identified in the pleading."  246 F.3d 850, 854 (6th Cir. 2001).

        This low standard for surviving motions to
dismiss is consistent with the ADA's purpose of broad coverage.
Congress indicated that pursuant to the new broad coverage

standard, "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and . . . whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110-325, § (2)(b)(5), 122 Stat. 3553.

In the ADAAA, Congress chastised the courts for "interpret[ing] the term 'substantially limits' to require a greater degree of limitation than was intended by Congress," thus "eliminating protection for many individuals whom Congress intended to protect" and scolded the EEOC for "expressing too high a standard" in regulations defining the term "substantially limits" as "significantly restricted." Id. §§ 2(a)(4), (a)(7)-(8), (b)(5) (stating that the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), "created an inappropriately high level of limitation necessary to obtain coverage under the ADA").

Congress expressly rejected the holdings of the United States Supreme Court in Sutton and Williams. Pub. L. No. 110-325, § 2(b), 122 Stat. 3553. Specifically, Congress (1) rejected Sutton's requirement to consider ameliorative effects of mitigating measures (such as medication or treatment) when determining disability, (2) rejected Williams's instruction to courts to interpret the ADA strictly to create a "demanding

standard for qualifying as disabled," (3) rejected Williams's
requirement that "an individual must have an impairment that
prevents or severely restricts the individual from doing activities
that are of central importance to most people's daily lives," and
(4) reinstated the Supreme Court's interpretation of "substantially
limits" under the standards set forth in School Board of Nassau
County v. Arline, 480 U.S. 273 (1987), "which set forth a broad
view of the third prong of the definition of handicap under the
Rehabilitation Act."  Pub. L. No. 110-325, § 2(b)(2)-(5), 122 Stat.
3553.

          Congress further explained that the proper
standard for "substantially limits" is lower than that espoused in
Williams and that the definition of "disability" should not be used
to unduly exclude otherwise qualified individuals from coverage
under the ADA.  29 C.F.R. pt. 1630, App. (citing Senate Statement
of Managers to Accompany S. 3406, 154 Cong. Rec S8840-01, 3 (2008)
("Sen. Manager's Statement")).  The revised EEOC guidelines explain
that an impairment that "substantially limits" a major life
activity must limit the activity in an "important [way,] . . .
[but] it need not rise to the level of severely restricting or
significantly restricting the ability to perform a major life
activity to qualify as a disability." Id. (citing Sen. Manager's
Statement at 2, 6-8, n.14; 2008 House Comm. on Educ. & Labor
Report, 9-10).

Although the language of the ADA remained the same after the amendments, Congress expressed several directives on how courts should interpret the term "substantially limits" in regard to an impairment's effect on an individual's important life activity.  Pub. L. No. 110-325, § 3(a)(4), 122 Stat. 3553.  First, the term "substantially limits" should be interpreted consistently with the ADA's purpose of "broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Id. § 3(a)(4)(B).  Second, a disability need only limit one major life activity.  Id. § 3(a)(4)(C).  Third, episodic or remitted impairments may still be considered disabilities if when active they would substantially limit a major life activity.  Id. § 3(a)(4)(D).  Finally, ameliorative effects of mitigating measures, except "ordinary eyeglasses or contact lenses" will not be considered when determining whether an impairment substantially limits a major life activity.  Id. § 3(a)(4)(E).  While these directives from Congress provide key insight into ways courts should address specific issues such as mitigating measures and episodic impairments, the task of defining "substantially limits" under the post-ADAAA standard as it applies to cases not addressing these specific issues was left to the courts.

Recent First Circuit Court of Appeals cases, however, do not apply the post-ADAAA standard of "substantially limits" because the events giving rise to the litigation in these

cases occurred prior to January 1, 2009, the effective date of the ADAAA.  See Thornton, 587 F.3d at 34 n.3 (finding that the ADAAA does not apply retroactively); accord Ramos-Echevarria, 659 F.3d at 188 n.9; Valle-Arce, 651 F.3d at 198 n.5; Carreras v. Sajos, Garcia & Partners, 596 F.3d 25, 33 n.7 (1st Cir. 2010); Faiola v. APCO Graphics, Inc., 629 F.3d 43, 48 n.4 (1st Cir. 2010).  These cases continued to apply the language of the pre-Amendment ADA along with its accompanying interpretations in EEOC regulations and case law, including Sutton and Williams.  Another case avoided having to define the new post-ADAAA standard by dismissing the claims on other issues.  Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 87 n.6 (1st Cir. 2012).  Consequently, as one court put it, "there is now a lack of case law relating to the interpretation of the ADAAA."  Feldman v. Law Enf't Assocs. Corp., 779 F. Supp. 2d 472, 483 (E.D.N.C. 2011).

Plaintiff Garcia's automobile accident occurred on July 28, 2009, and all of her impairments began after that date. (Docket No. 22 at pp. 5-9.)  Accordingly, her claim is governed by the ADAAA, which became effective on January 1, 2009.  Due to the shortage of caselaw on this subject, the Court looks to the few cases in other districts that have addressed the post-ADAAA standard for determining a disability.

Some post-ADAAA cases based decisions on the table in the EEOC proposed regulations, which categorize certain

impairments as those that "almost always," "sometimes," and "never"
constitute a disability under the ADA.  See Proposed Rules,
Regulations to Implement the Equal Employment Provisions of the
Americans With Disabilities Act, as amended, 74 Fed. Reg. 48431-01
(Sept. 23, 2009) [hereinafter EEOC Proposed Rules] (to be codified
at 29 C.F.R. pt. 1630); see also Feldman, 779 F. Supp. 2d at 483-85
(holding that episodic multiple sclerosis is categorized as an
"impairment[] that will consistently meet the definition of
disability" and a "mini-stroke" is categorized as an "impairment
that may be disabling for some individuals but not for others");
Horgan v. Simmons, 704 F. Supp. 2d 814, 819 (N.D. Ill. 2010)
(noting that the EEOC proposed regulation "lists HIV as an
impairment that will consistently meet the definition of
disability," even when in remission); Jaka K. Terry, The ADA
Amendments Act Three Years After Passage:  The EEOC's Final
Regulations and the First Court Decisions Emerge At Last, 58-Dec
Fed. L. 49, 51 (2011) [hereinafter "EEOC At Last"] (characterizing
the EEOC's categories as "almost always," "sometimes," and "never"
qualifying as a disability).   Under this framework, a back
impairment is sometimes considered a disability.  EEOC Proposed
Rules, 74 Fed. Reg. at 48442.  For example, an individual with a
back impairment that limits standing, walking, or lifting over
twenty pounds and that is expected to last for several months is an
individual with a disability. Id. Although those tables were not

included in the final EEOC regulation, they still shed light on
Congress' intended interpretation. <u>Molina v. DSI Renal, Inc.</u>, 840
F. Supp. 2d 984, 995 (W.D. Tex. 2012); EEOC At Last, at 51 (stating
that the EEOC deleted these lists from the final regulation).

            Several post-ADAAA cases emphasize the low
burden at the pleadings stage of litigation. <u>See</u> <u>Feldman</u>, 779 F.
Supp. 2d at 485 (stating "at this early stage of the proceedings,
the court is unwilling to say that [the plaintiff] has failed to
sufficiently allege that he had a disability"); <u>Lowe v. Am.</u>
<u>Eurocopter, LLC</u>, No. 1:10CV24-A-D, 2010 WL 5232523, at *8 (N.D.
Miss. Dec. 16, 2010) ("Whether or not Plaintiff can in fact prove
that her weight rises to the level of a disability under the ADA is
not at issue here, as a motion to dismiss is not the proper method
for evaluating the merits of Plaintiff's specific assertions."
(citing <u>Swierkiewicz</u>, 534 U.S. at 514)).  Other cases note that the
ADAAA has also lowered the bar for establishing a disability at the
summary judgment stage. <u>Molina</u>, 840 F. Supp. 2d at 994-96 (finding
that lumbar pain from disc derangement, causing pain that limits
walking and standing, would likely not have been considered a
disability prior to the ADAAA, but is now considered a disability);
<u>see also</u> <u>Franchi v. New Hampton Sch.</u>, 656 F. Supp. 2d 252, 259
(D.N.H. 2009) (finding "that a successful ADA claim does not
require 'excruciating details as to how the plaintiff's
capabilities have been affected by the impairment,' even at the

summary judgment stage" (quoting <u>Gillen v. Fallon Ambulance Serv.,</u>
<u>Inc.</u>, 283 F.3d 11, 24 (1st Cir. 2002))).  This emphasizes the low
bar for establishing a disability under the post-ADAAA standard;
the standard for surviving a motion to dismiss is lower than to
survive a motion for summary judgment.  <u>Horgan</u>, 704 F. Supp. 2d at
819 (citing Fed. R. Civ. P. 8(a)).

        Here, plaintiff Garcia suffers from high blood
pressure and strong back pain caused by cervical strain,
lumbosacral strain, and bulging disks in her lower back.  (Docket
No. 22 at pp. 6, 8.)  Her pain is exacerbated by sitting for long
periods of time, which is required by her job as a vocational
counselor.  <u>Id.</u> at pp. 4-5.  Plaintiff Garcia's back pain from
lumbar strain and bulging disks is similar to plaintiff Molina's
"intermittent back pain . . . [from] lumber internal disc
derangement, lumbar radiculopathy, and lumbago."  <u>See</u> <u>Molina</u>, 840
F. Supp. 2d at 994.  Molina, like plaintiff Garcia, experienced
increased pain from extended sitting, but "learned to tolerate the
pain" in order to perform the duties of her job fully.  <u>See</u> <u>id.</u>
The district court in <u>Molina</u> compared the manner in which the
individual performs the major life activity, including pain
experienced, with the manner in which the general population
performs the major life activity.  <u>Id.</u> at 995 (citing 29 C.F.R.
§ 1630.2(J)).  The <u>Molina</u> court held that although Molina's back
pain might not have qualified as a disability under the

pre-amendment standard, pursuant to the expanded scope of the amendments, "a reasonable juror could find Molina was substantially limited in a major life activity . . . ." Molina, 840 F. Supp. 2d at 996. Similarly, this court in Barlucea Matos v. Corp. del Fondo del Seguro del Estado found that plaintiff Barlucea's back pain from multiple surgeries, which limited her ability to sit for extended periods, amounted to a disability under ADAAA. No. 10-1868(GAG), 2013 WL 1010558, at *2, *6 (D.P.R. Mar. 14, 2013) (Gelpi, J.). As plaintiffs Barlucea and Molina's impairments of back pain from surgeries and lumbar injuries, which limited their abilities to sit for extended periods, were sufficient to meet the higher standard required on summary judgment, plaintiff Garcia's impairment of back pain from lumbar strain, which also limits her ability to sit for extended periods, is all the more sufficient to meet the lower standard required to survive a motion to dismiss pursuant to the post-ADAAA standard.

        Persuaded by the holdings in Molina and Barlucea, the EEOC's Proposed Rules stating that back pain is sometimes a disability, expressions by several courts of the new low bar for surviving motions to dismiss under the ADAAA, and Congress' intent that the term "substantially limits" be broadly interpreted, the Court finds that plaintiff Garcia has pled sufficient facts to notify defendants of her claim and state a right to relief under the ADA. While plaintiff Garcia certainly

Civil No. 13-1491 (FAB)                                                    25

could have done a much better job of detailing the exact ways in which her back pain "substantially limits" her ability to work, she has pled sufficient facts, when taken as true, to meet the "'easy-to-clear hurdles' necessary to survive a motion to dismiss." See Horgan, 704 F. Supp. 2d at 820.   Accordingly, plaintiff Garcia's ADA claims against defendant Clemente in his official capacity survive defendants' motion to dismiss.   Defendants' motion to dismiss in regards to this claim is **DENIED**.

## IV.   CONCLUSION

For the reasons stated, defendants' motion to dismiss, (Docket No. 38), is **GRANTED** as to plaintiff Garcia's individual capacity claims for damages against defendants Concepcion and Vallejo.   The claims against Concepcion and Vallejo are **DISMISSED WITH PREJUDICE.** Defendants' motion to dismiss is **DENIED** as to plaintiff Garcia's official capacity suit for injunctive relief against defendant Clemente.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 30, 2015.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE